UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DERRICK ALLEN                                                                         PLAINTIFF

V.                               No. 4:18CV00541-JM-JTR

DOC HOLLADAY, Sheriff,
Pulaski County Jail, *et al.*                                                       DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Moody can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

On August 20, 2018, Plaintiff Derrick Allen ("Allen") initiated this *pro se* § 1983 action while he was a pretrial detainee in the Pulaski County Detention Facility

("PCDF").[1] *Doc. 2.* He was then released from incarceration. *Doc. 16.* On November 1, 2018, his case was dismissed, without prejudice, for lack of prosecution. *Docs. 11 & 12.*

On December 3, 2018, Allen filed a Motion to Reopen, stating that he wished to pursue his case even though he was no longer incarcerated. *Doc. 18.* The Court granted that Motion and ordered him to file an Amended Complaint. *Doc. 20.* On March 7, 2019, he filed his Amended Complaint. *Doc. 22.* Before Allen may proceed with this case, the Court must screen his allegations.[2]

## II. Discussion

In his Complaint and Amended Complaint,[3] Allen alleges that, while he was housed in the PCDF's R Unit for an unspecified period of time, his security was at

---

[1]Initially, Allen sought to join 22 other PCDF detainees as Plaintiffs. In accordance with the Court's practice, the action was severed into separate lawsuits. *Doc. 7.*

[2]The Prison Litigation Reform Act requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or a portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b). When making this determination, a court must accept the truth of the factual allegations contained in the complaint, and it may consider documents attached to the complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

[3]The Court has construed Allen's *pro se* Complaint and Amended Complaint, together, as constituting his claims. *See Kiir v. N.D. Pub. Health,* 651 Fed. Appx. 567, 568 (8th Cir. 2016) (amendment "intended to supplement, rather than to supplant, the original complaint," should be read together with original complaint); *Cooper v. Schriro,* 189 F.3d 781, 783 (8th Cir. 1999) (*pro se* pleadings must be liberally construed).

risk because the "link door" separating the R and S Units was open "for hours at a time." According to Allen, when the link door was open, one deputy watched both units, which together housed more than 150 inmates. Allen alleges that PCDF policy and "federal law" mandate no more than 80 inmates per officer. He alleges that his security was further at risk because R unit had only one security camera (which left multiple "blind spots") and the speakers in the cells did not work. *Doc. 2 at 5-6*.

As a result of what Allen claims was a "shortage of staff," the inmates in R Unit were placed on lockdown. This meant inmates in R Unit were only allowed to come out of their cells one hour per day, which: limited their access to the phone; forced them "to give up cell clean-up"; unfairly treated general population inmates as if they were "Ad Seg."; prevented them on some occasions from showering or "get[ting] [their] full portion of food"; and forced them to plead guilty to their criminal charges in order to get out of the PCDF. *Id.; Doc. 22 at 4*. Allen alleges that, if inmates sought help about these matters, they were "threatened, maced and placed in the hole." *Doc. 2 at 5-6*.

Allen alleges that the above-described conditions in R Unit violated his rights under the Eighth and Fourteenth Amendments. He seeks $1.5 million in damages. *Id. at 5 & 7*.

For the following reasons, the Court concludes that Allen has failed to state a claim upon which relief may be granted.

### A. No Personal Involvement

Allen's initial Complaint contained no factual or legal allegations against any of the named Defendants (Sheriff Doc Holladay, Grievance Officer Sgt. Brawley, Major Briggs, Sgt. Musaddiq, Lt. Bang and Lt. Routh). *Doc. 2 at 1-2*. In ordering Allen to file an Amended Complaint, the Court pointed out this deficiency and expressly ordered him to file an Amended Complaint "explaining how each Defendant was *personally involved* in violating his constitutional rights." *Doc. 20 at 3-4*. Despite this clear instruction, his Amended Complaint adds a Defendant (Deputy Ryan Crancer) but still contains only conclusory allegations that fail to identify any specific individuals, explain how each of them were personally involved in the alleged constitutional violations, or provide any specific facts demonstrating how these alleged constitutional violations resulted in him sustaining any physical injuries. *Doc. 22 at 1-2 & 4*.

Merely naming an individual or entity as a Defendant is insufficient to state a claim against that individual or entity. *See Krych v. Hvass,* 83 Fed. Appx. 854, 855 (8th Cir. 2003) (holding that *pro se* plaintiff failed to state a claim against individuals that he "merely listed" in the complaint as defendants). Instead, to state a viable § 1983 claim, a prisoner "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," and the complaint must contain sufficient "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 676 & 678; *see Keeper v. King.,* 130 F.3d 1309, 1314 (8th Cir. 1997) (holding that the "general responsibility for supervising the operations of a prison in insufficient to establish the personal involvement required to support [§ 1983] liability"). Liability under § 1983 "requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts,* 909 F.2d 1203, 1208 (8th Cir. 1990). Allen has not alleged sufficient personal involvement on the part of *any* of the named Defendants.

B.     **No Personal Harm**

In his Complaint, Allen vaguely alleged that "security is at risk" and that the activities and privileges of PCDC inmates, in general, were limited by the staff shortage and lockdown. In ordering Allen to file an Amended Complaint, the Court expressly advised him that he: (1) could not proceed on behalf of other inmates; (2) could "proceed only on the alleged constitutional violations *he personally experienced*"; and (3) was required to "explain how he was *personally harmed or injured*" by those violations and how long he endured them. *Doc. 20 at 3-4.*

Despite these clear instructions, Allen's Amended Complaint continues to assert claims on behalf of "the inmates" at PCDF. *Doc. 22 at 4.* "A prisoner cannot bring claims on behalf of other prisoners." *Martin v. Sargent,* 780 F.3d 1334, 1337 (8th Cir. 1985); *see Barrows v. Jackson,* 346 U.S. 249, 255 (1953) ("Ordinarily, one

may not claim standing … to vindicate the constitutional rights of some third party."); 28 U.S.C. § 1654 (parties must "plead and conduct their own cases personally or by counsel"). Those claims cannot proceed, and the Court will consider Allen's allegations only as they relate to him personally.

Like his Complaint, Allen's Amended Complaint gives no dates or other details, nor does it state how long he was subjected to the allegedly unconstitutional conditions of confinement. His Amended Complaint also fails to allege any physical injuries he sustained as a result of the alleged constitutional violations or explain how he was otherwise personally harmed. *See Doc. 22 at 4.* Allen's vague and conclusory allegations fall far short of stating a constitutional claim.

Although the "Constitution does not mandate comfortable prisons," the "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the [cruel and unusual punishment clause of the] Eighth Amendment."[4] *Farmer v. Brennan,* 511 U.S. 825, 832 (1994); *see Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (Eighth Amendment prohibits conditions that involve the "wanton and unnecessary infliction of pain"). To state a

---

[4]Technically, Allen's claims are analyzed under the Fourteenth Amendment's due process clause, instead of the Eighth Amendment's cruel and unusual punishment clause, because he was a pretrial detainee (and not a convicted prisoner) while he was at the PCDF. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). However, the Eighth Circuit applies the same standard to conditions of confinement claims based on either the Fourteenth or Eighth Amendment. *See, e.g., Crow v. Montgomery,* 403 F.3d 598, 601 (8th Cir. 2005).

viable Eighth Amendment claim, a prisoner or a detainee must allege facts demonstrating that: (1) objectively, he suffered a deprivation that was "sufficiently serious" enough to deny him "the minimal civilized measure of life's necessities," or to pose "a substantial risk of serious harm" to his health or safety; and (2) subjectively, the defendants were "deliberately indifferent" to the risk of harm posed by the deprivation. *Farmer*, 511 U.S. at 834 & 837.

The Eighth Circuit has held that a plaintiff must assert an injury that is greater than *de minimis* to satisfy the objective prong of an Eighth Amendment claim. *Irving v. Dormire,* 519 F.3d 441, 448 (8th Cir. 2008); *see Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999) (finding that a prisoner failed to state a viable claim because he was not actually harmed by the allegedly inadequate security at a prison); *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) (finding no constitutional violation where a prisoner failed to demonstrate that he was actually harmed as a result of being exposed to raw sewage); *see also* 42 U.S.C. § 1997e(e) (providing that: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury"). The length of time that a prisoner is subjected to the allegedly unconstitutional conditions is a "critical factor" in the analysis. *Smith,* 87 F.3d at 269; *see also Whitnack v. Douglas County,* 16 F.3d 954, 958 (8th Cir. 1994).

Allen has not alleged any facts suggesting he was ever attacked or injured in any way due to the alleged "security risk." Nor has he alleged facts showing that he was denied life's necessities such as food, shelter or water, or that he suffered the unnecessary or wanton infliction of pain. At most, he sustained *de minimis* injuries which cannot support a viable Eighth Amendment claim.[5]

Allen alleges that "inmates" had restricted telephone access during the lockdown, limiting "them" in calling their lawyers, bondsmen and family. *Doc. 2 at 5; Doc. 22 at 4.* Again, Allen does not allege how restricting his access to a telephone to one hour a day personally affected him to the extent that it rose to the level of a constitutional violation. Limiting Allen to accessing a telephone during the one hour a day he allegedly was not on lockdown does not violate the First Amendment. *See, e.g., Holloway v. Magness,* 666 F.3d 1076, 1079 (8th Cir. 2012); *Whitfield v. Dicker,* 41 Fed. Appx. 6, 7 (8th Cir. 2002). Finally, Allen has not alleged any facts demonstrating that he was *actually harmed or injured* by the restricted telephone use, which is an essential element for pleading a viable constitutional claim for denial of access to the courts. *See Lewis v. Casey,* 518 U.S. 343, 355 (1996); *Johnson v. Hamilton,* 452 F.3d 967, 973 (8th Cir. 2006) (to sustain a "claim based on denial

---

[5]To the extent that Allen is attempting to assert a claim based on alleged non-compliance with PCDF "policy," his claim also fails. It is well settled that a violation of an internal prison policy or regulation alone does not give rise to § 1983 liability. *Moore v. Rowley,* 126 Fed. Appx. 759, 760 (8th Cir. 2005); *Gardner v. Howard,* 109 F.3d 427, 430 (8th Cir. 1997).

of access to legal materials, counsel, or the courts, [a prisoner] must prove that he suffered an actual injury or prejudice as a result of the alleged denial of access"); *Whitfield*, 41 Fed. Appx. at 7. Accordingly, Allen's vague and conclusory claim that he was only allowed access to the telephone for one hour a day, during the time R Unit was on lockdown, does not rise to the level of a constitutional violation.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Allen's Complaint and Amended Complaint (*Docs. 2 & 22*) be DISMISSED, WITHOUT PREJUDICE.

2. The dismissal of this case be counted as a "STRIKE," pursuant to 28 U.S.C. § 1915(g).

3. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be taken in good faith.

DATED this 13th day of June, 2019.

_____
UNITED STATES MAGISTRATE JUDGE